# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOHN MURRAY,                          )
                                      )
          Plaintiff,                  )          No. 16-cv-9463
                                      )
     v.                               )
                                      )
GHALIAH OBAISI, et al.,               )          Hon. Charles R. Norgle
                                      )
          Defendants.                 )

## ORDER

Defendants' motion for summary judgment [73] is granted. Civil case terminated.

## MEMORANDUM OPINION

John Murray is currently serving a sentence in the Illinois Department of Corrections for armed robbery and murder. Plaintiff filed suit under 42 U.S.C. § 1983 against, Dr. Saleh Obaisi, Dr. A Martija, and Physician's Assistant (PA) LaTanya Williams ("Individual Defendants"), and Wexford Health Sources, Inc., alleging that all Defendants were deliberately indifferent to his serious medical condition in violation of his rights protected by the 8th Amendment of the United States Constitution. While incarcerated, Plaintiff was diagnosed with a reducible inguinal hernia, received treatment for his condition, and underwent repair surgery in May 2015. Plaintiff, however, alleges that Defendants improperly stalled medical treatment before receiving the hernia repair surgery, and Defendants provided inadequate medical treatment regarding his post-surgery pain. Pending before the Court is Defendants' motion for summary judgment on all claims. For the reasons discussed below, judgment is granted in Defendants' favor.

# I. BACKGROUND

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits. Because Plaintiff is the nonmoving party, the Court construes the facts in the light most favorable to him. The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." King v. Chapman, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

On November 20, 2014, Dr. Obaisi treated Plaintiff during a medical visit and recorded that Plaintiff had symptoms stemming from chronic low back pain and a right inguinal reducible hernia. Dr. Obaisi recorded in his notes that Plaintiff complained only of low back pain, not from hernia pain. During this appointment, Dr. Obaisi prescribed Tylenol #3 and a hernia truss. On December 22, 2014, Plaintiff was taken to urgent care after telling a medical technician that he slipped while walking in the yard and pulled his groin. Dr. Obaisi evaluated Plaintiff and noted that he had a small right inguinal hernia and noted the "hernia reduced." Plaintiff was prescribed a Toradol injection, which is a non-steroidal anti-inflammatory drug used to treat moderate to severe pain.

On January 7, 2015, Plaintiff complained to Dr. Obaisi that his hernia had been painful for the last several hours and that the hernia truss was not helping. Dr. Obaisi prescribed another Toradol injection, more Tylenol #3, and scheduled a follow-up appointment within thirty days. Dr. Obaisi also prepared a Medical Special Services Referral Report in which Plaintiff was referred to the University of Illinois Medical Center for a general surgery consultation for his recurrent right

inguinal hernia. As medical director, Dr. Obaisi was the proper person to refer Plaintiff for a non-emergent off-site medical consultation with a specialist.

Within a week, on January 15, 2015, a different doctor, Dr. Martija, evaluated Plaintiff's inguinal hernia. Dr. Martija's notes include a reference that Plaintiff was awaiting a surgical referral to UIC. Dr. Martija administered another Toradol injection. Plaintiff was approved for a general surgery evaluation at UIC on January 22, 2015. UIC scheduled Plaintiff's surgical consultation for April 20, 2015.

On February 11, 2015, PA Williams evaluated Plaintiff and prescribed a Toradol injection, Tylenol #3, and told Plaintiff to return in one week or sooner if his symptoms worsened. On February 19, 2015, Dr. Obaisi prepared a Medical Special Services Referral and report form for a Anesthesia Pre-Operative Evaluation Clinic evaluation in anticipation of Plaintiff's right inguinal hernia repair surgery.  On April 1, 2015, Dr. Obaisi evaluated Plaintiff and noted that Plaintiff's right inguinal hernia was reduced manually. During the visit, Dr. Obaisi administered another Toradol injection and told Plaintiff that he had been approved for the surgical consultation. On April 6, 2015, Dr. Obaisi evaluated Plaintiff related to low back pain. The medical records from Plaintiff's visit do not indicate that Plaintiff complained of pain related to his hernia.

On April 20, 2015, while at UIC, Plaintiff was evaluated by Dr. Bianco who recommended a right inguinal hernia repair surgery and scheduled it for May 8, 2015. He further recommended an anesthesia evaluation, which was approved for May 6, 2015.

On May 1, 2015, Plaintiff was approved for an APEC evaluation through the Wexford Collegial Review process. Dr. Obaisi prepared a note that indicated Plaintiff was post medical writ to UIC and that UIC recommended a right inguinal hernia surgery, which was approved by Wexford. On May 6, 2015, Plaintiff was sent to UIC for an APEC evaluation.

On May 8, 2015, Dr. Bianco performed a right inguinal hernia repair surgery on Plaintiff. After the surgery, Plaintiff was prescribed Acetaminophen-codeine 300 mg- 30 mg oral tablets and docusate sodium 100 mg oral capsules. Plaintiff was transferred to Stateville where he was evaluated by a registered nurse; Dr. Obaisi was notified. Dr. Obaisi ordered Tylenol #3 and Colace for Plaintiff. The next day, Plaintiff was evaluated by Dr. Martija who advised Plaintiff to stay on a clear liquid diet until certain body functions commenced, and then to only eat crackers for a specified period of time. Dr. Martija ordered a medical lay-in for one week, a low bunk and low gallery permit, and a follow-up visit with Dr. Obaisi.

On May 14, 2015, Dr. Obaisi evaluated Plaintiff and determined that Plaintiff's surgical wounds were healing well. The visit resulted in Dr. Obaisi ordering a single crutch for one week, Naprosyn 300 mg, which is a nonsteroidal anti-inflammatory medication used for pain relief, and Tylenol #3. On May 26, 2015, Dr. Obaisi evaluated Plaintiff and noted that Plaintiff was moving around with a crutch and his puncture wounds from the hernia surgery were healing well. Dr. Obaisi ordered Tylenol #3, continued use of the crutch, and a follow-up appointment in one month.

Dr. Obaisi evaluated Plaintiff on June 30, 2015 and July 30, 2015. During the July visit, Plaintiff complained of groin pain up to his lower abdomen. Dr. Obaisi's notes stated that there was no swelling, no masses, and that Plaintiff's bowels sounded normal. Dr. Obaisi further noted that there were no masses or abnormalities felt in Plaintiff's inguinal canal. Plaintiff was prescribed Naprosyn and Mobic medications.

On August 15, 2015, Dr. Martija evaluated Plaintiff for complaints of a seizure and left side chest pain. His notes did not mention that Plaintiff complained of abdominal or hernia pain. On August 25, 2015, PA Williams evaluated Plaintiff for complaints of pain associated with his

hernia. She prescribed Voltaren, a non-steroidal anti-inflammatory medication used to manage mild to moderate pain and referred Plaintiff to Dr. Obaisi.

On September 3, 2015, Dr. Obaisi evaluated Plaintiff for complaints of groin pain. His notes stated no acute findings, and assessed Plaintiff with post hernia repair pain and epilepsy. On November 9, 2015, Dr. Obaisi evaluated Plaintiff related to complaints of a skin rash; the doctor's notes did not state that Plaintiff complained about abdominal pain. On December 30, 2015, Dr. Obaisi evaluated Plaintiff about his urination frequency and discomfort in his lower abdomen. Dr. Obaisi noted that there were not acute findings and prescribed Tylenol 500 mg.

Plaintiff was scheduled for an appointment on January 20, 2016 but his medical records indicate that he went to the yard instead of his appointment, which was rescheduled for January 26, 2016. Plaintiff also missed his appointment on January 26, 2016. His medical records indicate that he went to the commissary instead of his appointment. On February 10, 2016, Dr. Obaisi evaluated Plaintiff related to "off and on" groin pain since his hernia repair surgery; Plaintiff also complained about a rash. Dr. Obaisi prescribed Tylenol 500 mg.

On May 2, 2016, PA Williams evaluated Plaintiff for complaints of low back pain. Her notes do not indicate that Plaintiff complained of pain related to his hernia. On July 29, 2016, PA Williams evaluated Plaintiff again for low back pain. And again, her notes do not indicate that Plaintiff complained of pain related to his hernia repair. PA Williams did, however, refer Plaintiff to Dr. Obaisi for an evaluation of his low back pain.

On August 8, 2016, Dr. Obaisi evaluated Plaintiff for complaints of low back pain. His notes indicate no acute findings and no complaints by Plaintiff of abdominal pain. On October 6, 2016, Dr. Obaisi evaluated Plaintiff for complaints of reduced hearing on his left side and scheduled a hearing test for Plaintiff. Dr. Obaisi's notes do not indicate Plaintiff complained of

abdominal pain. On February 9, 2017, Dr. Obaisi again evaluated Plaintiff's hearing condition. The doctor's notes from the medical visitation do not indicate that Plaintiff complained of any abdominal pain.

On March 17, 2017; May 5, 2017; and May 12, 2017, Plaintiff was evaluated by PA Williams for complaints of low back pain; her notes do not indicate that Plaintiff complained of abdominal pain.

Dr. Obaisi examined Plaintiff on April 25, 2017; May 16, 2017; June 28, 2017; August 30, 2017; September 7, 2017, for lower back pains. His notes do not indicate any complaints of abdominal pain. Dr. Obaisi also examined Plaintiff on July 19, 2017, for issues concerning Plaintiff's hearing.

At the Pontiac Correctional Center, on October 31, 2017, Plaintiff was evaluated by a medical provider for complaints of recurring hernia pain. The assessment indicated that Plaintiff's right inguinal hernia area was intact.

At Menard Correctional Center, on February 28, 2018, Plaintiff was evaluated by a medical provider. The evaluation notes indicate that no hernia was present; however, Plaintiff complained of chronic pain in his right groin area. On September 27, 2017, a physician at Menard Correctional Center saw Plaintiff because was in "so much pain."

The next day, Plaintiff was transferred to St. Elizabeth Hospital for an evaluation of his abdominal pain. He was diagnosed with a kidney stone on his right side. Dr. Omer Aker, MD, indicated that "the patient's symptoms may be on the bases [sic] of recently passed stone or represent inflammation." The doctors at St. Elizabeth noted that Plaintiff had a small hernia at the level of the umbilicus. Plaintiff did not have an inguinal hernia. The doctors did not recommend surgery for Plaintiff's umbilical hernia. Plaintiff stated that he did not notice a bulge in his

abdomen on September 28, 2018 but stated that he did see a bulge in his abdomen by his naval during his deposition on October 8, 2018.

## II. LEGAL STANDARD

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 648 (7th Cir. 2011) ("A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence."). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the

pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322).

### III. ANALYSIS

Plaintiff alleges Individual Defendants and Wexford were deliberately indifferent to his serious medical condition in relation to pain he suffered before and after his hernia repair surgery. The Eighth Amendment's restriction against cruel and unusual punishment "safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" Roe v. Elyea, 631 F.3d 843, 857 (7th Cir.2011) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)). "Accordingly, 'deliberate indifference to serious medical needs' of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." Id. at 857 (quoting Estelle, 429 U.S. at 104). Because medical professionals' treatment decisions are treated with great deference, a constitutional violation exists only if "no minimally competent professional would have so responded under those circumstances." Wilson v. Wexford Health Sources, Inc., 932 F.3d 513, 519 (7th Cir. 2019) (quoting Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998). Thus, it is the plaintiff's burden to "submit evidence that, if believed, would show such a serious deficit in [the medical professional's] course of action." Id.

To succeed on his Section 1983 claim under the theory that Defendants acted with deliberate indifference concerning his medical treatment, Plaintiff is required to overcome a high burden. Roe, 631 F.3d at 857 (citing Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008)

("Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts."). Deliberate indifference claims consist of both an objective and a subjective element. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). An inmate must be able to establish both (1) that he suffered an objectively serious medical condition and (2) that defendants acted with deliberate indifference to that condition. Id. As to the first prong, a condition is sufficiently serious if it "has been diagnosed by a physician as mandating treatment or…is so obvious that even a lay person would perceive the need for a doctor's attention." Roe, 631 F.3d at 857–58 (quoting Greeno v. Daley, 414 F.3d 645, 653 (7th Cir.2005)). As to the second prong, a plaintiff must prove that the defendants acted with a "sufficiently culpable state of mind," i.e., that they had actual knowledge of the plaintiff's condition but consciously disregarded it. Roe, 631 F.3d at 857 (quoting Farmer, 511 U.S. at 834); see also Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006).

## A.      Deliberate Indifference—Dr. Martija, Dr. Obaisi, and PA Williams

Although Plaintiff received a hernia repair surgery on May 8, 2015, he alleges that he suffered unnecessarily because Defendants ignored his complaints and stalled medical treatment, before and after surgery. Plaintiff's allegations can be separated into two different sets: pre- and post-hernia repair surgery. In both time frames, Plaintiff accuses Defendants of being "guilty" of acting with deliberate indifference to his serious medical condition, suffering from hernia pains. Pl. Resp. 5. Defendants, however, argue that the treatment Plaintiff received was not a substantial departure from accepted professional standards of care and that Plaintiff has failed to sustain both the objective and subjective requirements of a deliberate indifference claim.

### 1.    Dr. Obaisi

Plaintiff argues that Dr. Obaisi was deliberately indifferent to his serious medical condition before and after his hernia repair surgery. Specifically, he states that Dr. Obaisi originally diagnosed him with a hernia in 2012, but failed to record the ailment, and acted with deliberate indifference by delaying treatment until November 2014. Pl. Resp. 6; Pl. 56.1(b) ¶¶ 74-77. Plaintiff's evidentiary basis that he was diagnosed in 2012 are self-described contentions, which he urges the Court to lend more credence to than the opposition. Pl. Resp. 6. But, because this is a motion for summary judgment, the Court will not make credibility determinations on deciding whether questions of fact remain. See Fed. R. Civ. P. 56(e); see also Hicks v. Irvin, No. 06 CV 645, 2012 WL 4092621, at *6 (N.D. Ill. Sept. 17, 2012).

Nonetheless, during his deposition, Plaintiff testified that Dr. Obaisi diagnosed him with a hernia in 2012. Plaintiff was asked: "When are you claiming that inadequate medical treatment started?" He responded: "Oh, well, it was around early 2012 or something like that, I can't recall, man." Dtk.75, Def. Ex. A, 33:16-19. Defendants counter by stating that Plaintiff's testimony that he was diagnosed in 2012 is self-serving in an attempt to discredit it. But discrediting Plaintiff's testimony because it is 'self-serving' would be improper, as "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving." Hill v. Tangherlini, 724 F.3d 965, 967 (7th Cir. 2013) (citing Payne v. Pauley, 337 F.3d 767, 771 (7th Cir.2003). As such, Defendants have not provided evidence directly disputing Plaintiff's testimony, and thus the Court must find that Plaintiff was diagnosed with a hernia in 2012.

However, even accepting that Plaintiff's version of events, Plaintiff fails to overcome his difficult burden of demonstrating Defendants acted with deliberate indifference because they delayed treatment between his initial diagnosis in 2012 to November 2014. See Wilson, 932 F.3d

at 519. For support, Plaintiff cites to a district court case, <u>Wilson v. Obaisi</u>, No. 16 C 8446, 2017 WL 3070757 (N.D. Ill. July 19, 2017), which was reversed and remanded by the Seventh Circuit for further proceedings on the issue of deliberate indifference regarding Dr. Obaisi's actions. <u>See</u> <u>id.</u> In that case, the plaintiff, Wilson, testified that during a medical visit, Dr. Obaisi refused to discuss his hernia after bringing up the issue and pleading for surgery. <u>Id.</u> at 519. He also testified that over the next year he made several unsuccessful requests for treatment and filed a grievance. Dr. Obaisi was aware of the grievance as it was documented in by him in Wilson's medical chart. <u>Id.</u> Consequently, the court remanded the case after reasoning that the plaintiff presented evidence in which a jury could infer that Dr. Obaisi acted with deliberate indifference. <u>Id.</u> at 521.

Unlike Plaintiff here, Wilson was able to put forward enough evidence for a jury to draw an inference that Dr. Obaisi knew of a substantial risk of serious harm and disregarded it. <u>See</u> <u>Wilson</u>, 932 F.3d at 520. Because Wilson submitted medical records and testimony, which demonstrated that Dr. Obaisi knew of Wilson's grievance, the court stated that a jury could credit Wilson over Dr. Obaisi, and thus find that Dr. Obaisi knew about his painful hernia and explicitly refused to address Wilson's concerns along with never following up with Wilson to address his ongoing pain. The court held the credibility determination regarding Wilson's testimony that he was in terrible pain for 14-months before he received surgery and that he filed grievances to that effect should have gone to the jury. <u>Id.</u> at 521.

By contrast, Plaintiff lacks the evidentiary support to withstand summary judgment. He has not supplied enough evidence that a jury could use to infer deliberate indifference. Even after viewing the evidence in Plaintiff's favor, no reasonable jury could infer that Dr. Obaisi's actions (or inactions) rose to the level of egregious conduct required to satisfy the exacting deliberate indifference standard. <u>See</u> <u>Arnett v. Webster</u>, 658 F.3d 742, 751 (7th Cir. 2011) (noting that a

prison doctor demonstrates deliberate indifference by pursuing treatment "so blatantly inappropriate as to evidence intentional mistreatment"). Plaintiff did not testify that Dr. Obaisi ignored his ailments; rather, he said that Dr. Obaisi prescribed him medications and injections for his pain, Dkt. 77, Def. Ex. A, 33:7-14, and he was treated by Dr. Obaisi between 2012 and 2014. Id. 37:5-11. Further, Plaintiff's deposition testimony reveals that he did not recall when he first filed a grievance about his hernia. Not only does Plaintiff's testimony not indicate that his condition worsened, it fails to demonstrate that Dr. Obaisi was aware of any serious medical conditions or an increase of risk resulting from such condition.

Plaintiff further argues that the undisputed fact that on May 8, 2015, he underwent a right inguinal hernia repair surgery supports his argument that Dr. Obaisi did not permit him to receive a hernia surgery for three years. Pl. Resp. 6 (citing Pl. Resp. SOF ¶ 25). According to Plaintiff, the elapsed time between the initial diagnosis and referral to surgical consultation falls below the standard of care. Pl. Resp. 6-7. And thus, Dr. Obaisi was deliberately indifferent by choosing to implement a "watchful waiting" course of treatment for Plaintiff's hernia. But this argument fails because it calls into question one of medical judgment, which can only constitute deliberate indifference when the treatment is one that no minimally competent professional would have prescribed. Wright v. Obaisi, No. 18 C 0664, 2019 WL 3828607, at *3 (N.D. Ill. Aug. 15, 2019) (citing Collignon v. Milwaukee County, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances."). Delay in surgery in certain circumstances is an accepted course of treatment; Plaintiff has not provided evidence that delaying surgery to see if his hernia subsided was not an acceptable treatment plan. See

Gonzalez v. Feinerman, 663 F. 3d 311, 314 (7th Cir. 2011); Snipes v. DeTella, 95 F.3d 586, 592 ("a mere disagreement with the course…of treatment does not constitute an Eighth Amendment claim of deliberate indifference"); Allen v. Wexford Health Sources, Inc., No. 11 C 3834, 2011 WL 5588770, at *3 (N.D. Ill. Nov. 16, 2011) (holding the plaintiff failed to state a claim for deliberate indifference when the plaintiff demanded a higher dosage of pain medication as the plaintiff was not entitled to demand specific care or the best possible care).

After receiving the hernia repair surgery, Plaintiff was evaluated by a registered nurse and Dr. Obaisi who prescribed several days' worth of medication. Plaintiff received a wheelchair and then a crutch. Plaintiff's medical records indicate that he was evaluated 14 times between February 10, 2016 and September 7, 2017, during which he received medications. In short, Plaintiff received medical treatment post-surgery. It might well be the case that he was in pain after surgery, but the record does not demonstrate that he received the type of medical treatment that "no minimally competent professional would have so responded under those circumstances." Wilson, 932 F.3d at 519 (internal citations and quotations omitted); see also Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011) (negligence or inadvertence will not support a deliberate indifference claim).

"It is also important to reiterate that the Eighth Amendment does not require that prisoners receive 'unqualified access to health care.'" Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) (quoting Hudson v. McMillian, 503 U.S. 1, 9, (1992)); see also Forbes v. Edgar, 112 F.3d 262, 267 (7th Cir. 1997) ("Under the Eighth Amendment, [the plaintiff] is not entitled to demand specific care. [He] is not entitled to the best care possible. [He] is entitled to reasonable measures to meet a substantial risk of serious harm to her."). Even though Plaintiff may have wanted surgery forthwith, "the Constitution is not a medical code that mandates specific medical treatment." Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996). The uncontroverted record of continued

treatment shows that no reasonable jury could conclude that Dr. Obaisi was deliberately indifferent.

### 2. PA Williams and Dr. Marjita

Plaintiff argues that PA Williams and Dr. Marjita acted with deliberate indifference because they informed Plaintiff that there were no treatment options available to him and are equally responsible for adopting Dr. Obaisi's treatment protocol. Pl. Resp. 10. Defendants contend that they cannot be held liable for Dr. Obaisi's medical judgment and treatment of Plaintiff. Because Plaintiff neither argues nor pleads that Defendants followed a company policy which the Defendants followed and violated his constitutional rights, Defendants correctly state that under Section 1983, the doctrine of *respondeat superior* does not apply here. See Wilson, 932 F.3d at 521 (quoting Iskander v. Village of Forrest Park, 690 F.3d 126, 128 ("a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights").

Defendants further argue that the record indicates Dr. Marjita and PA Williams provided abundant and satisfactory medical treatment to Plaintiff. As discussed in detail above, PA Williams and Dr. Marjita evaluated, prescribed pain-relieving medication, and made medical referrals multiple times during the alleged timeframe. There is nothing in the record that a reasonable jury could point to and infer that either PA Williams or Dr. Marjita acted with that requisite state of mind or with disregard to a serious medical condition. See Wilson, 932 F.3d at 520; Grieveson v. Anderson, 538 F.3d 763, 777 (7th Cir. 2008).

Therefore, given the record of ample medical treatment provided by the Individual Defendants, and at the same time construing the facts in Plaintiff's favor, Plaintiff has failed to present a triable issue of fact that the Individual Defendants' conduct amounted to negligence,

much less deliberate indifference. Thus, summary judgment is entered in Individual Defendants' favor.

**B.      Deliberate Indifference—Wexford**

Imposing liability against Wexford under Section 1983 requires Plaintiff to satisfy Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978). *Monell* claims apply equally to municipalities and to "§ 1983 claims brought against private companies [such as Wexford] that act under color of state law." Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 664 (7th Cir. 2016) (citing Shields v. Ill. Dep't of Corr., 746 F.3d 782 (7th Cir. 2014)).

Plaintiff has not identified a custom or policy that has deprived him of his constitutional rights; instead, he attempts to establish Wexford's liability by arguing that its employees, Dr. Obaisi, PA Williams, and Dr. Marjita, committed "'a series of bad acts' creating an inference that municipal officials were aware of and condoned the misconduct of their employees." Minix v. Canarecci, 597 F.3d 824, 832 (7th Cir. 2010); Pl. Resp. 10. This argument fails.

For Wexford to have awareness of constitutional violations, there must first be a constitutional violation. See Minix, 597 F.3d at 831; Saucedo v. City of Chicago, No. 11 C 5868, 2015 WL 3643417, at *4 (N.D. Ill. June 11, 2015); Alexander v. City of South Bend, 433 F.3d 550, 557 (7th Cir. 2006) (finding that a plaintiff cannot pursue a *Monell* claim absent proof of a constitutional violation). Here, as detailed above, none of the individual Defendants violated Plaintiff's constitutional rights. Therefore, Plaintiff's claim against Wexford fails and judgment must be entered in Wexford's favor. See Lapre v. City of Chicago, No. 15 C 3199, 2017 WL 4005922, at *8 (N.D. Ill. Sept. 12, 2017), aff'd, 911 F.3d 424 (7th Cir. 2018).

## IV. CONCLUSION

For the reasons stated, Defendant's motion for summary judgment is granted. Civil case terminated.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 20, 2019